IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICAL INDUSTRIES, LTD., | ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 02-1512-SLR (Consolidated) |
| ABBOTT LABORATORIES, FOURNIER INDUSTRIE ET SANTE and LABORATOIRES FOURNIER S.A., | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

| | | |
|---|---|---|
| IMPAX LABORATORIES, INC., | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 03-120-SLR (Consolidated) |
| ABBOTT LABORATORIES, FOURNIER INDUSTRIE ET SANTE and LABORATOIRES FOURNIER S.A., | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

| | | |
|---|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) | Civ. No. 05-340-SLR (Consolidated) |

**MEMORANDUM ORDER**

At Wilmington this 5th day of November, 2008, having reviewed the parties'

submissions regarding multiple pretrial disputes;

IT IS ORDERED that:

1. **Use of depositions at trial.** Defendants may introduce at trial the deposition designations from certain expert witnesses retained by plaintiffs, consistent with the following:

    a. I understand that the witnesses identified by defendants[1] were designated by plaintiffs as expert witnesses expected to testify at trial, pursuant to Fed. R. Civ. P. 26(b)(4)(A)(1); therefore, they submitted expert reports and were deposed.

    b. Although in the past I have considered experts to be impartial witnesses, I now believe the better reasoned view of expert witnesses is as follows:

> While in theory an expert is meant to testify impartially as to his opinion, the fact that a party has control over whether or not to introduce the expert and testimony supported by him, and the fact that the party has the right to choose the expert in the first place, certainly adds credence to the theory that an agency relationship exists between the expert and his supporting party. Given that dynamic, it is unclear why a statement made by an expert in the course of his testifying on behalf of a party, which is adverse to that party, should not be admissible against that party.

*Onti, Inc. v. Integra Bank*, 1998 WL 671263 at *2 (Del. Ch. August 25, 1998).

    c. Statements under Fed. R. Evid. 801(d)(2)(C) and (D) are admissible "on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801 advisory committee's note (subdivision (d)). No guarantee of trustworthiness is required in the case of an admission; instead, "the responsibility of a party is considered

---

[1] Richard Grimm, Sander Robins and Rodolfo Soto.

sufficient to justify reception in evidence against him." *Id.*

  d.  Under the above reasoning, the depositions of the plaintiffs' experts can be used by defendants pursuant to Fed. R. Civ. P. 32(a)(3), provided such testimony "would be admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(1)(B).

  e.  The next question, therefore, is whether the probative value of the depositions is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

  f.  In conducting the Rule 403 analysis, the following factors should be considered:

   (1)  Discovery depositions are different from trial depositions; i.e., the scope of relevance is very broad during discovery and, therefore, discovery depositions might be prejudicial if allowed at trial.

   (2)  Where a timed trial is contemplated, parties are encouraged to pare their cases down and only proffer their "best" and "most convincing" evidence.

   (3)  If the testimony of the retaining party's expert is being offered to buttress the testimony of the opposing party's own expert, is the testimony merely cumulative?

   (4)  If the testimony of the retaining party's expert is being offered to discredit the retaining party, its counsel or its theory of the case, is there evidence that the retaining party has abused the adversary process by, e.g., identifying multiple experts (thus putting the opposing party to the burden of deposing and otherwise

rebutting these experts' opinions) without a realistic need to call all of the experts at trial (i.e., using the discovery process to cull the best evidence at the expense of the opposing party)? In this regard, if there have been no objections or other indications by an opposing party that the retaining party has engaged in such abusive practices, chances are that this factor cannot be satisfied.

      g. Having concluded that there are no absolute evidentiary obstacles to the use of these depositions by defendants, nevertheless, I am without sufficient information to analyze the above factors. Therefore, before their use as substantive evidence,[2] defendants will be required to identify their designations to plaintiffs and bring all objections to my attention for resolution.[3]

    2. **Use of retrospective chart reviews.** Defendants may **not** introduce the Hilleman and NDC Health documents (retrospective chart reviews), as they do not constitute reliable evidence on the issue of whether TriCor® 145 provides an improved lipid profile over that provided by TriCor® 160. As noted by plaintiffs, although defendants admit that these studies are simply "an efficient way to explore the **possibility of what one might see** happen in the real clinical outcomes,"[4] defendants

---

[2]As opposed to using the deposition for purposes of impeachment, pursuant to Fed. R. Civ. P. 32(a)(2). Although I have said in the past that an expert can be impeached by a rock, I clearly meant a learned rock.

[3]In order to rninimize the mischief associated with the use of expert depositions, it has been suggested that the opposing party be allowed to use the deposition without identifying the expert as being associated with the retaining party and/or requiring the opposing party to pay the costs of the deposition. See, e.g., Peterson v. Willie, 81 F.3d 1033, 1037-38 (11th Cir. 1996).

[4]Civ. No. 02-1512, D.I. 700 at 12-13 (emphasis added).

clearly want the jury to accept this evidence as proof of the matter asserted, that is, that TriCor® 145 does provide an improved lipid profile. Pursuant to Fed. R. Evid. 403, I conclude that there is no way to introduce this evidence without confusing the jury because the evidence, in fact, is not sufficiently (scientifically) corroborated for use in this fashion.

3. **Daubert motion.** Teva's motion to exclude the testimony of Sally A. Look, Ph.D. (Civ. No. 02-1512, D.I. 674; Civ. No. 05-340, D.I. 472) is denied. Having reviewed Dr. Look's expert report and the other papers submitted in connection with the motion practice, I conclude that Dr. Look's experience and methodology (review of Teva's documents) pass muster under *Daubert.*

4. **Prevention of "free riding."** I am not persuaded by the case law defendants cite for the proposition that the prevention of "free riding" is a legitimate business justification. Indeed, the Hatch-Waxman Act establishes and condones the opposite proposition, the "piggybacking" of generics.[5] Based on the reasoning of such cases as *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011 (N.D. Ill. 2003),[6] if

---

[5]*See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("A central purpose of the Hatch-Waxman Act . . . is to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible.") (*citing* 149 Cong. Rec. S15885 (Nov. 25, 2003)) (internal quotation omitted).

[6]The court in *SmithKline* explained the paradigm as follows:

SmithKline points out that Apotex wants to take a free ride ("usurping," SmithKline calls it) on the considerable investment made by SmithKline in obtaining FDA approval for Paxil. It is indeed much easier to establish bioequivalence than it is to convince the FDA that an original drug is safe and effective. But that kind of free riding the law permits, and indeed the Hatch-Waxman Act encourages. Moreover, free riding is an integral part of the scheme of patent law. In exchange for the

defendants present their "free riding" argument, I will include an instruction that such conduct is lawful.

5. **Miscellaneous.**

   a. **Voir dire.** By noon tomorrow, Thursday, November 6, 2008, the parties shall email to my chambers civil email address an agreed upon version of the "lists" to be reviewed by the jury panel. The lists shall be captioned as follows: (1) "LIST OF COMPANIES AND ORGANIZATIONS"; (2) "LIST OF ATTORNEYS"; (3) "LIST OF WITNESSES"; and (4) "LIST OF SUBJECT AREAS".

   b. **Number of jurors.** Ten (10) jurors will be seated.

   c. **Number of peremptory challenges.** Plaintiffs, collectively, shall have six (6) peremptory challenges; defendants, collectively, shall have four (4) peremptory challenges.

   d. **Preliminary instructions.** I plan to read these instructions to the jury on Friday, November 7, 2008, unless the parties **all** prefer to have them read on the following Monday morning.

   e. **Schedule.** I plan to start jury selection by 9:30 a.m. on Friday, November 7, 2008. If the parties have issues that need to be addressed before 9:30,

---

exclusive and in the case of Paxil very valuable rights that a valid patent grants, the patentee is required to make public disclosure of the steps required to create the patented product, so that when the patent expires and the patented product enters the public domain, competitors can manufacture the product. Those competitors are free riders with a vengeance. But they are lawful free riders. And so is Apotex.

*Id.* at 1051-52.

they need to contact chambers.

    f. **Trial hours.** Plaintiffs, collectively, shall have 28 hours in which to present their case. Defendants, collectively, shall have 26 hours in which to present their case.

    g. **Documents.** Local counsel will receive by email on Thursday the final versions of the voir dire, preliminary instructions and trial schedule. Counsel will receive the first draft of the final jury instructions after the completion of jury selection.

_____
United States District Judge